## US FEDERAL DISTRICT COURT OF MIDDLE TENNESSEE, NASHVILLE.

| | |
|---|---|
| PLAINTIFF. ) | |
| Paul E. Amadi. ) | |
| V. ) | Case No: _____ |
| DEFENDANT ) | |
| ) | |
| Danielle W. Barnes ) | **Complaint.** |
| TN Commissioner of Human Services. ) | |

2017 FEB 16 PM 1:07  U.S. DISTRICT COURT MIDDLE DISTRICT OF TN  FILED

### JURISDICTION.

This court has both personal & subject matter jurisdiction over civil right violations of Plaintiff pursuant to 42 US Code 1883.

### VENUE.

Plaintiff and Defendant reside and conduct business within the state of Tennessee and are domiciled within the Middle Tennessee court district. Furthermore, alleged violations occurred within this Court's jurisdiction.

### STATEMENT OF FACTS.

Prior to 2011, Defendant had severally suspended the driving privileges of the Plaintiff for non-payment of Child Support, through the State Dept of Safety and reinstated it after Plaintiff paid large sums to Defendant. By 2011, Plaintiff's son turned 18 years old and Plaintiff approached the Davidson County Family Court to terminate the Support as proscribed by Tennessee law and the law of the State of North Carolina, where the Plaintiff's son resided. Defendant attorney deliberately argued falsely and fabricated that because the Plaintiff's son was born in New York State, that New York State had original jurisdiction and as such New York State Statue that extends Child Support until the age of 21 applied. As a result, the Family Court ruled in favor of Defendant, and insisted the

Plaintiff should continue to pay until his son turned 21 years of age. Plaintiff studied the subject, and consulted local attorneys who denounced the Defendant's argument as false. Thereafter, Plaintiff wrote to the New York State Child Support agency and the New York court. Both discredited the claim made by Defendant.

Even the North Carolina Child Support Agency insisted Defendant was not being truthful and had original jurisdiction and so Tennessee laws applied to the case after realizing Plaintiff had made serious inquiries . The whole purpose was for the Defendant to collect more money for another three years from Plaintiff and keep some of it as was the practice. After a whole year of harrassments and distress, Plaintiff forwarded all the papers Plaintiff received from both North Carolina and New York State to the Tennessee governor's office and the Defendant quickly dropped their claim. This was not without threats as one Saturday morning, a staff of the Child Support office called Plaintiff and rained more abuses and threats , saying Plaintiff would suffer for digging out the truth from New York state. She boldly identified her name as Miss Jackie Brown.

Thereafter, Plaintiff started receiving letters from both North Carolina and Defendant about the arrearage Plaintiff owed on Child Spport . Out of about 8 letters Plaintiff received none of the figures matched . Obviously, they were misrepresenting figures to inflate the rerarage. Sometime in 2012, Defendant remitted information to the State Dept Of Safety, to suspend Plaintiff's driving privileges and demanded a lump some amount of $500 dollars to lift the suspension.  Plaintiff took the sum of $400 to Defendant and Defendant employee assured Plaintiff she had remitted information to the Dept of Safety for reinstatement of driving privilege.

Meanwhile, Plaintiff and Plaintiff ex-wife were facing a serious mental health issue with their son. He had been hospitalized several times. Plaintiff asked that his son be sent to him to see if the problem was environmental. In January of 2013, Plaintiff's son arrived from

North Carolina and Plaintiff informed Defendant that the child in question was now in Tennessee. During a conversation, Plaintiff disclosed to his ex-wife how Plaintiff had paid $400, and how much Plaintiff had been paying yearly over the years to Defendant and asked if ex-wife received them accordingly. Ex-wife said she often received about 60% of payments and out of the $400 paid to Defendant, ex-wife received only $140 dollars. Plaintiff's ex-wife was infuriated. In fact, agents of the Child Support office in North Carolina informed Plaintiff about Plaintiff's wife fury and demand on them to stop any kind of collection. She was advised to swear an affidavit to end it entirely. She swore an Affidavit and forwarded one to Plaintiff, copied both her state, North Carolina and Defendant in Tennessee. Plaintiff also sent his copy to Defendant. Defendant acknowledged receipt of Affidavit and promised Plaintiff every collection had been stopped . Strangely, Defendant again in June of 2013, a month after all these, suspended Plaintiff's driving privilege again.

Plaintiff was unaware of this suspension and was busy attending to his son's mental health from one hospital to the other. Also Plaintiff learned that the State of North Carolina had sent an official letter to Defendant to close the whole collection matter in November of 2013. Plaintiff later learned from his intereactions with the Dept of Safety that the Defendant did not send any kind of information to Safety to clear Plaintiff. On the 10th of March, 2014, Plaintiff was pulled over by a Lavergne city police officer and cited for driving on suspended license. This was 10 months from the time Defendant should have cleared Plaintiff of all restrictions. Plaintiff contacted Defendant's office and was told by the staff that it had released every hold on Plaintiff's driving privilege, but refused to give Plaintiff a letter to that effect. When Plaintiff insisted, Plaintiff was given a vaque letter . Not satisfied with the letter, Plaintiff contacted Defendant predecessor who sent another letter, carefully avoiding blame, but informing Plaintiff she had directed her office of

3

Child Support to release all hold on Plaintiff's driving privilege. Within weeks Plaintiff received a printout from the Dept of Safety showing Plaintiff's license rienstatement. Plaintiff then sent the printout, with the letter, pleading not guilty to the charge of driving on suspended license. Plaintiff believed that had resolved the problem. But on February 4th of 2015, Plaintiff was arrested on a warrant over the license suspension. After days, Plaintiff's cousin from New York, using his credit card, made bail and the Plaintiff was released. When the Plaintiff appeared in court again, Plaintiff believing the Court would Honor a letter from a State Commissioner and Dept of Safety printout, handed the judge these documents. The judge explained the letter was vague and if he received a clear letter from the Defendant stating it made a mistake, he would dismiss the charge. Plaintiff promised the judge and another day in court was set. Plaintiff then began to plead with Defendant for a concise letter stating Defendant failed to update information and contact the Safety Dept to ensure the "all holds on license" had been lifted. Defendant refused such acknowledgment of fault severally. When Plaintiff appeared in court again without the Letter from the Defendant, the Rutherford County Public Defender advised Plaintiff that without the letter that the judge would not dismiss the charge and told the Plaintiff to plead guilty and pay a fine of $6. When the Plaintiff pleaded guilty, Plaintiff was slapped with fines exceeding $500 dollars and probation. Plaintiff felt again deceived and walked out of the court. Plaintiff indicated to the Court and probation office that he was innocent from the beginning and to put him through such punishments was unfair. Plaintiff refused to honor the probation. Subsequently Plaintiff was charged with probation violation, a felony and arrested. After 6 days in jail, again Plaintiff's cousin from New York posted bail with his credit card and Plaintiff was released. This felony charge on Plaintiff's record affected every aspect of Plaintiff's life. From automobile insurance to employment. Plaintiff was surprised to find out that when he approached Farm Bureau insurance company to buy

automobile insurance, Plaintiff was told of the felony and this on his record " individual is likely dangerous and should be handled with care," among other derogatory phrases. No companies would offer Plaintiff any kind of employment. The one company wanted employees desperately and offered Plaintiff a low paying wage. Plaintiff had returned from Africa, where he had spent many months running for election and had planned to return after a month to help his party campaign after he lost in the primaries. With all these charges and court appearances, it was impossible for Plaintiff to travel. While in jail, Plaintiff was once set aside to be deported but strongly insisted he is a citizen and a Veteran.

Plaintiff was determined to prove his innocence and made frequent calls to the State Dept of Safety to clear Plaintiff with a letter, since the Defendant's office was reluctant to do so And claimed it was the Safety Dept fault. Both state offices were blaming each other. The Safety Dept said if the Defendant office sent it a letter admitting fault, it would give Plaintiff a letter to the Rutherford Court but Defendant office refused.

Fade up with all these distress and possible jail term of one year for probation violation, Plaintiff went to the State governor's office and Plaintiff's congressmen's. It was then that the Defendant called Plaintiff to say that his office would accompany the Plaintiff on Plaintiff's next court date of February 2016. The State Dept of Safety subtly acknowledged its long issues with Defendant and demanded that Defendant pay it the sum of $250 dollars to clear a suspension request made by Defendant on Plaintiff. Defendant paid the amount to Safety and the Safety Dept completely cleared Plaintiff of any suspensions. In court, on The 16th of Febraury, 2016, Defendant attorney was in court to plead with the judge that Defendant made the mistake of not properly updating its records and that was why the Plaintiff was being cited and arrested. The judge took her plea and dismissed all charges.

5

## CONCLUSIONS.

1. Plaintiff believes and concludes that Defendant was not truthful and had been negligent, therefore causing Plaintiff to experience traumatic experiences that have resulted in the Plaintiff taking depression drugs first time ever in Plaintiff's life.

2. Plaintiff suffered severe loss of income from employment and from business, humiliation as a result of derogatory information posted on the internet from arrests.

3. Plaintiff believes Defenandant was only after money and willing to cheat, lie and deceive .

4. That The fact that Defendant quickly reinstated Plaintiff driving privilege or caused it to be reinstated was proof that Defendant controlled the information but was more concerned about the liability of acknowledging fault or failure to perform the duties of his or her office that , the Plaintiff was long denied a letter demanded by the Judge.

5. Plaintiff is still saddled with debts to cousin and other family members who bailed him out twice and supported Plaintiff as Plaintiff struggled during this ordeal.

6. Plaintiff believes Defendant has violated Plaintiff civil right by causing Plaintiff to be arrested, imprisoned and traumatized in many ways and by attempt to deport him, humiliated, in pursuant to US 42 Code 1983.

7. Plaintiff believes Defendant caused his Constitutional right to freedom to be violated willfully or due to negligence because if Defendant had forwarded information to the Safety Dept in 2013, after closure of all collections, Plaintiff would not have been cited.:

8. Defendant's admission before the judge was sufficient admission of guilt.

Now Plaintiff Prays this court to hold Defendant guilty of causing violation of the Civil right of the Plaintiff and render judgment in favor of Plaintiff with monetary compensation in the amount of $100,000. And to further restrain the Defendant from engaging directly or indirectly in any actions to harass, intimidate or cause any

Respectfully Submitted

_Paul Amadi_
Signature of Mover/ Plaintiff

Address  4030 Margo Circle
Lavergne, TN 37086
Telephone  615 582-1306
Email: Businessguards@yahoo.com.

## CERTIFICATE OF SERVICE.

I hereby certify that on the day of  02/16/17, the forgoing Summons/ Motion was forwarded by certified mail, fax, email, handed to in court to

Danielle W. Barnes
Commissioner of Dept of Human Services
State of Tennessee.
400 Deadrick St,
Nashville, TN 37243.

_Paul Amadi_
Paul. E.Amadi

State Warrant - Court of General Sessions

# STATE OF TENNESSEE RUTHERFORD COUNTY
## AFFIDAVIT OF COMPLAINT

Personally appeared before me __Wanda Watkins__ Judge of Court General Sessions/Judicial Commissioner for said county, the undersigned
Who made oath to the following statement of facts:

That on the __10th__ day of __March__ __2014__ in Rutherford County, Tennessee

**CHRIS IRWIN**
LPD
LAVERGNE  TN

**PAUL EZEWUNWA AMADI**

did unlawfully operate a motor vehicle upon Old Nashville Hwy at a time when his privilege to do so was suspended due to: failure to pay child support , in violation of T.C.A. 55-50-504, B-M.

Affiant makes oath that on above date he conducted a traffic stop on Old Nashville Hwy due to a light law violation. Affiant made contact with the driver who was identified as PAUL AMADI. A check upon Mr. Amadi's license revealed it to be suspended due to failure to pay child support. Therefore, Mr. Amadi was issued a citation for DRIVING ON SUSPENDED DRIVERS LICENSE.

Said informant, therefore charges that the offense of **Driving on Suspended Drivers License** has been committed in said County and State and charges the said
PAUL EZEWUNWA AMADI therewith. Sworn to and subscribed before me this __23rd__ day of __March__ __2014__

_Affiant_  284 LPD

Judge, Court of General Sessions, or
Judicial Commissioner

## STATE OF TENNESSEE RUTHERFORD COUNTY

To any Lawful Officer of Said County;
The foregoing affidavit of complaint having been made before me that the offense of **Driving on Suspended Drivers License** has been committed, and charges
PAUL EZEWUNWA AMADI thereof, you are therefore commanded in the name of State forthwith to arrest and bring before a Judge of the Court of General Sessions, the said
PAUL EZEWUNWA AMADI to answer the above charge

Issued this __23rd__ day of __March__ __2014__

Judge or Judicial Commissioner

Case 3:17-cv-00366   Document 1   Filed 02/16/17   Page 8 of 9 PageID #: 8

IN THE GENERAL SESSIONS COURT OF RUTHERFORD COUNTY,
TENNESSEE 16TH JUDICIAL DISTRICT AT MURFREESBORO

1306

STATE OF TENNESSEE ) Case # 356973
)
)
VS. )
)
)
Paul Amadi )
)

## ORDER

This cause came to be heard on the 16 day of February, 2016. The defendant having appeared in court, and considering all the proof, the court orders; It appearing the defendant's motion is well taken; his conviction for Driving without a license is set aside, and this case is dismissed without costs. Therefore, the violation of probation warrant issued as a result of this case is also dismissed.

This is the 16 day of February, 2016.

_____
General Sessions Judge

_____  _____
Assistant District Attorney      Attorney for Defendant

_____  _____
Prosecuting Witness/Victim       Defendant