UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PAUL E. AMADI,<br><br>    Plaintiff,<br><br>v.<br><br>DANIELLE W. BARNES,<br>COMMISSIONER OF TENNESSEE<br>DEPARTMENT OF HUMAN SERVICES,<br><br>    Defendant. | Case No. 3:17-cv-00366<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Newbern |

To:   The Honorable William L. Campbell, District Judge

## REPORT AND RECOMMENDATION

By Order entered February 23, 2017, the District Court referred this action to the Magistrate Judge under 28 U.S.C. § 636(b)(1) for report and recommendation on all dispositive motions. (Doc. No. 4.) Pending before the Court is Defendant Danielle Barnes's Motion to Dismiss (Doc. No. 8). For the reasons offered below, the undersigned RECOMMENDS that the Motion to Dismiss be GRANTED and this action DISMISSED WITHOUT PREJUDICE to Plaintiff Paul E. Amadi filing an amended complaint.

**I.    Background**

**A. Amadi's Allegations**

The following factual allegations are taken from Amadi's complaint (Doc. No. 1) and presumed to be true for purposes of this motion. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 676 n.1 (6th Cir. 2011).

On March 10, 2014, Plaintiff Paul E. Amadi was pulled over by a "La Vergne city police officer and cited for driving on a suspended license." (Doc. No. 1, PageID# 3.) "[U]naware of this suspension," Amadi was surprised. (*Id.*) Although he had lost driving privileges in the past as a result of his failure to make child support payments (*id.* at PageID# 2), Amadi was expecting nothing of that sort the day he was cited; 10 months prior, his ex-wife signed an "affidavit"—submitted in her home state of North Carolina and forwarded to the Tennessee Department of Human Services (DHS)—swearing that she wanted to end collection of child support. (*Id.* at PageID# 3.) DHS had assured Amadi that it received the affidavit and "promised [him] every collection had been stopped." (*Id.*) Even if DHS had stopped actively trying to collect payments from Amadi, however, it did not convey that to the Tennessee Department of Safety and Homeland Security (DSHS), which led to the suspension of his driver's license. (*Id.*)

Although Amadi's license was reinstated after he informed DHS and DSHS of the error, the citation for driving on a suspended license remained. (*Id.* at PageID# 4.) On February 4, 2015, Amadi "was arrested on a warrant over the license suspension." He was able to make bail with his cousin's financial help. (*Id.*) At his next court appearance, Amadi provided a letter from "Defendant predecessor"—the prior Commissioner of DHS—in an effort to demonstrate his innocence. (*Id.* at PageID# 3–4.) While the letter "carefully avoid[ed] blame," it also instructed the "office of Child Support to release all hold[s] on [Amadi's] driving privilege." (*Id.*) "The judge explained [that] the letter was vague" and stated that, "if he received a clear letter from [DHS] stating it made a mistake, he would dismiss the charge." (*Id.* at PageID# 4.) DHS refused to provide Amadi with another letter and when, "[he] appeared in court again without [one], the Rutherford County Public Defend[er] advised [Amadi] that . . . the judge would not dismiss the charge and

2

told [Amadi] to plead guilty and pay a fine of $6." (*Id.*) Amadi took counsel's advice and pleaded guilty, only to be "slapped with fines exceeding $500 [] and probation." (*Id.*)

Convinced that his "punishment[] was unfair," Amadi "refused to honor the probation." (*Id.*) "Subsequently, [he] was charged with probation violation, a felony[,] and arrested." (*Id.*) After Amadi spent six days in jail, during which he was briefly "set aside to be deported," Amadi's cousin again posted bail, and Amadi was released. (*Id.*) "[D]etermined to prove his innocence," Amadi "made frequent calls to [DSHS] to clear [him] with a letter, since [DHS] was reluctant to do so [a]nd claimed it was [DSHS's] fault. Both state offices were blaming each other." (*Id.* at PageID# 5.) "[Fe]d up," Amadi reached out to the offices of his congressmen and the governor. (*Id.*) Soon after, DHS agreed to "accompany [Amadi]" to court for his next appearance. (*Id.*) On February 16, 2016, "Defendant attorney was in court to plead with the judge that Defendant made the mistake of not properly updating its records and that was why [Amadi had been] cited and arrested." (*Id.*) "The judge took her plea and dismissed all charges." (*Id.*)

Yet that dismissal could not undo the damage that had been done. The "felony charge" on Amadi's record had "affected every aspect of [his] life." (*Id.* at PageID# 4.) Amadi was unable to obtain automobile insurance and "[n]o companies would offer [him] any kind of employment." (*Id.* at PageID# 5.) The charge and related court appearances also prevented Amadi from traveling to Africa, "where he had spent many months running for [office] and had planned to return . . . to help his party campaign after he lost in the primaries." (*Id.*) Amadi "suffered [a] severe loss of income" and experienced "humiliation as a result of derogatory information posted on the internet [relating to] his arrests." (*Id.* at PageID# 6.) He is "still saddled with debts to [his] cousin and other family members who bailed him out twice and supported [him] as [he] struggled during this ordeal." (*Id.*) He also started "taking depression drugs" to cope. (*Id.*)

3

Amadi filed this action on February 16, 2017, under 42 U.S.C. § 1983,[1] alleging that "Defendant caused his Constitutional right to freedom to be violated willfully or due to negligence[,] because if Defendant had forwarded information to [DSHS] in 2013, after closure of all collections, [Amadi] would not have been cited." (*Id.*) Amadi "believes Defendant was only after money and [was] willing to cheat, lie[,] and deceive." (*Id.*) Further, Amadi alleges that he was "long denied [the] letter" the judge had requested only because DHS was "concerned about the liability of acknowledging fault." (*Id.*) Amadi seeks "monetary compensation in the amount of $100,000" and an order "restrain[ing] the Defendant from engaging directly or indirectly in any actions to harass [or] intimidate" him. (*Id.*)

**B. Barnes's Motion to Dismiss**

Barnes filed her motion to dismiss on March 15, 2017 (Doc. No. 8), under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). Barnes argues that she "enjoys Eleventh Amendment immunity for the claims against her in her official capacity, qualified immunity for the claims against her in her individual capacity, and statutory immunity insofar as [Amadi's] complaint sounds in state tort law." (*Id.* at PageID# 24.) Further, she argues that service of process on her was insufficient for any official capacity claim because Amadi failed to serve the Tennessee Attorney General's Office. (*Id.*) Finally, Barnes argues that "the allegations in [Amadi's] Complaint do not state an actionable 42 U.S.C. § 1983 claim" against her because she was not the Commissioner of DHS until February of 2017, which was "several years after the alleged events

---

[1] Although Amadi indicates on the Civil Cover Sheet (Doc. No. 1-1, PageID# 10) that he is filing under 42 U.S.C. § 1883, the undersigned construes that as a typo, given that (1) § 1883 does not create civil rights cause of action (it authorizes the National Science Foundation to establish an Office of Small Business Research and Development), and (2) Amadi invokes § 1983 on the last page of his complaint (Doc. No. 1, PageID# 6).

4

giving rise to [Amadi's] claims occurred" and because Amadi's claim is barred by the relevant one-year statute of limitations. (Doc. No. 9, PageID# 37, n.3.)

**C. Amadi's Response**

On March 27, 2017, in a filing entitled "Response to Motion to Dismiss," Amadi requested a "30 day[] extension to obtain the service of an attorney," explaining that "back and shoulder injuries" and the medications he was taking had "slowed his activities down [c]onsiderably." (Doc. No. 10, PageID# 51.) Amadi attached 19 exhibits to his request for an extension, which all relate to the allegations he makes in his complaint. (*Id.* at PageID# 54–75.) The Court GRANTS this motion and considers Amadi's response as timely filed.[2]

Still proceeding pro se, Amadi filed his response to the motion to dismiss on April 24, 2017. (Doc. No. 12.) Amadi argues that DHS has waived its sovereign immunity, that Barnes experienced no prejudice from any failure to effect proper service, and that Barnes should be "liable for the actions of her predecessor" because her recent appointment does not "cancel out any wrongdoing[] or unlawful acts emanating from [her] office[] or administration." (*Id.* at PageID# 78–80.) He also argues that his civil rights were being violated until the court dismissed all charges against him on February 16, 2016, and that he filed his complaint exactly one year later. (*Id.*) Amadi alleges "violation of his federal civil rights—the right to move freely, wrongful arrest[,] wrongful imprisonment[,] and emotional distress" and states that he was deprived of "the

---

[2] Because Amadi filed his request for an extension within 14 days of the filing of the motion to dismiss, and because Barnes has not argued that Amadi's April 24, 2017 response was untimely, that response is properly before the Court. *See Moore v. Piedmont Bus. Colls., Inc.*, No. 3:14-CV-2390, 2015 WL 4545727, at *3 (M.D. Tenn. July 28, 2015) (accepting defendant's argument that plaintiff's response to the motion to dismiss was untimely where the plaintiff "offered no justification for the late filing [n]or made any formal request for the court to excuse the error."); *see also AXA Equitable Life Ins. Co. v. Grissom*, No. 3:11-CV-0618, 2012 WL 3991794, at *1 n.2 (M.D. Tenn. Sept. 11, 2012) (considering plaintiff's late-filed response despite its untimeliness).

rights and privileges of equal protection of the law." (*Id.* at PageID# 77.) He also asserts his claim to monetary damages.[3] (*Id.* at PageID# 81.)

## II.  Legal Standard

### A.  Dismissal for Lack of Subject Matter Jurisdiction

Federal courts are "courts of limited jurisdiction" possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's constitutional or statutory power to hear the case before it. Fed. R. Civ. P. 12(b)(1); *Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847, 851 (W.D. Ky. 2007). Such a challenge can come in two forms. A facial attack accepts the material allegations of the complaint as true but insists nonetheless that the court lacks subject matter jurisdiction to hear the case. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). A factual attack claims that the court lacks subject matter jurisdiction irrespective of what the plaintiff has pleaded, and requires the trial court to weigh the evidence before it in determining whether that is the case. *Id.* "A state's assertion of sovereign immunity constitutes a factual attack." *Hornberger v. Tennessee*, 782 F. Supp. 2d 561, 564 (M.D. Tenn. 2011). In response to such an attack, the plaintiff bears the burden of establishing the existence of subject matter jurisdiction. *DLX, Inc.*, 381 F.3d at 516. In ruling on a factual attack, the trial court

---

[3]     The last sentence of Amadi's response to the motion to dismiss reads: "[i]n the case of *City of Erin* [*v.*] *Southard of Tennessee,* filed in this Court, Plaintiff is asking for $850,000 dollars for same civil right violation in wrongful arrest, Plaintiff trusts the jury to decide." (Doc. No. 12, PageID# 81.) Amadi appears to be referencing the case of *Southard v. Moore*, to which the City of Erin was a defendant and in which Southard alleged that he was wrongfully arrested in violation of his First and Fourth Amendment rights and requested $850,000 in damages. Complaint at 8–9, 15, *Southard v. Moore*, No. 3:17-cv-00242 (M.D. Tenn. Feb. 1, 2017), ECF No. 1. It is not clear whether Amadi cites *Southard* to provide supplemental authority in support of his claim for damages, or if he does so in an effort to raise the amount he is requesting in damages to $850,000.

6

may rely on materials outside the pleadings without converting the 12(b)(1) motion into one for summary judgment. *Cline v. United States*, 13 F. Supp. 3d 868, 871 (M.D. Tenn. 2014).

### B. Dismissal for Insufficient Service of Process

Service of process must comply with Federal Rule of Civil Procedure 4. Fed. R. Civ. P. 4. When it does not, a defendant may move to dismiss based on insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). Fed. R. Civ. P. 12(b)(5). To serve a "state, a municipal corporation, or any other state-created governmental organization," a plaintiff must either deliver a copy of the summons and of the complaint to the relevant entity's "chief executive officer" or serve a copy of the same "in the manner prescribed by the relevant state's law for serving a summons or like process on such a defendant." *Id.* § 4(j)(2)(A)–(B).

### C. Dismissal for Failure to State a Claim

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id*. (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

7

the defendant is liable for the misconduct alleged." *Id*. Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**III.    Analysis**

An analysis of a 12(b)(6) motion to dismiss a cause of action for failure to state a claim is only properly undertaken when the court is satisfied that it has jurisdiction over the action. *Bell v. Hood*, 327 U.S. 678, 682 (1946). Because the Eleventh Amendment is "a true jurisdictional bar," Barnes's sovereign immunity defense will be analyzed before her Rule 12(b)(6) motion. *Russell v. Lundergran*, 784 F.3d 1037, 1046 (6th Cir. 2015).

As Barnes points out, Amadi "does not specify" whether he has sued Barnes "in her official or individual capacity." (Doc. No. 9, PageID# 32.) Barnes argues that, faced with such ambiguity, the Court should presume that Amadi has raised only an official capacity claim. (*Id.*) (citing *Moore v. City of Harriman*, 272 F.3d 769, 772, 775 (6th Cir. 2001).) Amadi has certainly sued Barnes in her official capacity—sovereign immunity is relevant only to official-capacity claims, and Amadi asserts in his response that DHS has waived that defense "by receiving federal funds" and that "Defendant cannot put itself above the law, disregard accountability, [or] act unethically simply because it has [s]overeign immunity." (Doc. No. 12, PageID# 78.) But Amadi's complaint can also be construed as asserting a claim against Barnes in her individual capacity—he has requested damages, which are only available in individual capacity suits, and Barnes has raised the defense of qualified immunity (Doc. No. 9, PageID# 33), indicating that she was on notice that she might have been sued in her individual capacity. *See Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (explaining that, to determine the capacity in which a state official has been sued when the

8

plaintiff's complaint is silent on that question, the court employs a "course of proceedings" test, which considers "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity . . ."). Claims against Barnes in both her official and individual capacity are therefore analyzed below.

### A. Sovereign Immunity

An entity that is an "arm of the state," rather than a "political subdivision" (like a city), is treated as an extension of the state and can therefore invoke the defense of sovereign immunity. *Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). So, too, can a state official who is sued in her official capacity, because such a suit "is not a suit against the official but rather is a suit against the official's office" and therefore "no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *see also Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (explaining that, typically, a "judgment against a public servant 'in [her] official capacity' imposes liability on the entity that [she] represents . . .").

Although Barnes does not offer any argument with respect to the question of whether DHS is an "arm of the state"—and instead opts for the more general proposition that, in most circumstances, "neither a state, its agencies, nor its officials acting in their official capacities may be sued for money damages in federal court" (Doc. No. 9, PageID# 32)—this Court has already answered that question in the affirmative. *Hornberger*, 782 F. Supp. 2d at 564–67. Because DHS is an "arm of the state," Barnes is immune to Amadi's claim for damages unless (1) Tennessee has consented to such a suit and thereby waived its immunity, (2) the *Ex Parte Young* exception applies, or (3) Congress has properly abrogated Tennessee's immunity to Amadi's claim. *S & M*

*Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). None of those exceptions applies to Amadi's damages claim against Barnes in her official capacity.

The question of whether a state intends to "subject itself to suit in federal court" is at the core of the waiver analysis. *Gentry v. Tenn. Bd. of Judicial Conduct*, No. 3:17-CV-00020, 2017 WL 6462348, at *5 (M.D. Tenn. Sept. 26, 2017) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). A state waives its immunity in a statute or constitutional provision "only where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Id.* (quoting *Atascadero State Hosp.*, 473 U.S. at 254). Barnes argues that Tennessee has not waived its immunity through statute and, instead, has expressly preserved it. (Doc. No. 9, PageID# 32) (citing Tenn. Code Ann. § 20-13-102(a)). Yet Amadi's argues that, by receiving federal funds in connection with the "Rehabilitati[on] Act," DHS has "waived its right to claims of immunity." (Doc. No. 12, PageID# 78.) The Sixth Circuit has held that "States waive their Eleventh Amendment immunity with regard to Rehabilitation Act claims when they accept federal funds," *Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 628 (6th Cir. 2001), but Amadi has not brought a Rehabilitation Act claim against Barnes. *See* 29 U.S.C. § 701(b)(1). Thus, even if DHS has waived immunity to Rehabilitation Act claims by receiving funds in connection with the Act, any such waiver is irrelevant to Amadi's action.

Amadi makes two other arguments to support his argument that Tennessee has waived its immunity, neither of which has merit. First, he claims that the State of Tennessee has "permitted litigation of [a] similar nature in the past" and has therefore waived immunity to his suit. (Doc. No. 12, PageID# 79.) Amadi provides no authority to substantiate that statement or indication of what "similar" litigation he might have in mind. Second, Amadi cites *Howlett ex rel Howlett v. Rose* to support his position. (*Id.*) That case, which involved a state court's decision to extend

sovereign immunity to a local school board in contravention of federal law, is irrelevant to Amadi's claims. *See* 496 U.S. at 365–66, 375–76 (1990). The State of Tennessee has not waived its immunity to Amadi's claim for damages.

Nor has Congress abrogated Tennessee's immunity to lawsuits, like Amadi's, brought under § 1983. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citing *Will*, 491 U.S. at 58, 66) ("Section 1983 does not abrogate Eleventh Amendment immunity."). As such, neither a State, nor a state official sued in her official capacity, is a "person" subject to suit under § 1983. 42 U.S.C. § 1983 ("Every *person* who, under color of" law, violates another's federal rights, "shall be liable to the party injured in an action at law . . .") (emphasis added); *Will*, 491 U.S. at 64, 71.

Finally, the doctrine of *Ex parte Young* does not apply to Amadi's claim. *Ex parte Young* held that a state official who seeks to enforce a law that violates the federal Constitution is "stripped of [her] official or representative character and is subjected in [her] person to the consequence of [her] individual conduct." *Ex parte Young*, 209 U.S. 123, 159 (1908); *see also Will*, 491 U.S. at 71 n.1 (explaining that a state official sued in his or her official capacity for injunctive relief, is a "person" subject to suit under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). However, the Supreme Court has clarified that, under *Ex parte Young*, "a federal court's remedial power . . . is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman*, 415 U.S. at 677.

There is no indication that Amadi's prayer for "monetary compensation in the amount of $100,000" (Doc. No. 1, PageID# 6) is anything other than a request for a retroactive award of damages, which the Court's holding in *Edelman* forbids. *See* 415 U.S. at 677. Amadi does also

seek prospective injunctive relief—namely, an order "restrain[ing] the Defendant from engaging directly or indirectly in any actions to harass [or] intimidate" him. (Doc. No. 1, PageID# 6.) But the $100,000 of "compensation" (*id.*) that Amadi claims cannot reasonably be construed "as a necessary consequence of compliance in the future" with that order, *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (quoting *Edelman*, 415 U.S. at 668), nor as a "penalty imposed to enforce" it, *Hutto v. Finney*, 437 U.S. 678, 691–92 (1977). *Ex parte Young* does not apply to allow Amadi's claim for damages against Barnes in her official capacity.

Sovereign immunity bars the damages claim Amadi has brought against Barnes in her official capacity, and the undersigned recommends dismissal of that claim. However, because Amadi has requested prospective injunctive relief, and because his complaint might be construed as asserting a damages claim against Barnes in her individual capacity, the undersigned recommends that Barnes's 12(b)(1) motion to dismiss Amadi's case as a whole be denied.

### B. Failure to Effect Proper Service

Barnes also moves for dismissal of Amadi's claims against her in her official capacity for failure of service under Federal Rule of Civil Procedure 12(b)(5). (Doc. No. 9, PageID# 35.) Because a suit against Barnes in her official capacity "is a suit against the State of Tennessee itself," Barnes argues that service of process must comply with Federal Rule of Civil Procedure 4(j)(2), which provides that a state government "or any other state-created governmental organization that is subject to suit" must be served by:

    (A) delivering a copy of the summons and of the complaint to its chief executive officer; or

    (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2). Amadi responds that Barnes has "not suffered any material prejudice to ask for dismissal over service of process[.]" (Doc. No. 12, PageID# 79.)

It appears, however, that Amadi properly effected service under Rule 4(j)(2)(A). Barnes argues that "service was not proper under 4(j)(2)(A) because [Barnes] did not serve Tennessee's Governor (the chief executive officer)." (Doc. No. 9, PageID# 35.) Yet Tennessee law establishes that the chief executive officer of DHS is its commissioner. Tenn. Code Ann. § 4-3-111(14); *compare Fisher v. Merryman*, 32 F. App'x 721, 723 (6th Cir. 2002) (suggesting that service of the Kentucky Transportation Cabinet's CEO, rather than the Governor of Kentucky, would have been enough to satisfy 4(j)(2)(A)), *and Holmes v. Gonzalez*, No. 1:09-CV-259, 2010 WL 1408436, at *2 (E.D. Tenn. Apr. 2, 2010) (holding that the CEO of the Tennessee Department of Financial Institutions is its commissioner) (citing Tenn. Code Ann. § 4-3-111), *with Robinson v. Tenn. Highway Patrol*, 2017 WL 3234390, at *2 (W.D. Tenn. July 31, 2017) (suggesting that the CEO of a Tennessee state agency for purposes of 4(j)(2)(A) is the governor). Barnes concedes "that a summons was sent via certified mail to Commissioner Barnes at her DHS office." (Doc. No. 9, PageID# 36.) Service of process was therefore properly executed on Barnes in her official capacity.

**C. Failure to State a Claim**

Amadi's remaining claims against Barnes include a claim for injunctive relief and an individual capacity claim for damages.[4] Barnes addresses the individual capacity claim specifically, arguing that qualified immunity protects her from any liability. (Doc. No. 9, PageID# 33.) She also offers three other theories as to why any claims against her should be dismissed under

---

[4] Although Barnes has raised the defense of state statutory immunity "insofar as [Amadi's complaint] sounds in state tort law," the undersigned concludes Amadi does not bring any tort claims. Barnes invokes § 1983 in his complaint without mentioning a state cause of action and, in his response to Barnes's motion to dismiss, he argues only his federal claims.

13

12(b)(6): (1) Amadi has failed to "articulate[] any federal right that has been violated other than some indeterminate 'right to freedom'" (*id.* at PageID# 37); (2) Amadi has failed to "specify any acts or omissions by Commissioner Barnes" (*id.*); and (3) the one-year statute of limitations applicable to Amadi's § 1983 claims has run (*id.* at PageID# 38).

### 1. Amadi's claim for injunctive relief

In order to justify injunctive relief against a state officer acting in her official capacity, a plaintiff must show a "continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 71 (1985). Amadi has asked the Court for an order that would "restrain the Defendant from engaging directly or indirectly in any actions to harass[] [or] intimidate" him. (Doc. No. 1, PageID# 6.) But, as Barnes emphasizes, Amadi does not "specify any acts or omissions by Commissioner Barnes" that would constitute harassment or intimidation (Doc. No. 9, PageID# 37) and, therefore, has not alleged anything that would support the inference that she is likely to harass or intimidate him in the future. Further, there is no indication that any of the allegedly illegal conduct that gave rise to this lawsuit—the wrongful suspension of Amadi's license, his subsequent arrest for driving on a suspended license, the charge of probation violation, and DHS's unwillingness to quickly admit fault to exculpate him (Doc. No. 1, PageID# 3–5)—is ongoing. Amadi has been cleared of all charges stemming from the wrongful suspension of his driver's license and his license has been reinstated. (Doc. No. 1, PageID# 5–6; Doc. No. 12, PageID# 81.) Because Amadi has alleged no continuing violation of federal law and, instead, seeks compensation for past injuries, he does not state a claim for injunctive relief against Barnes.

### 2. Amadi's individual capacity claim for damages

In order to state a claim for damages under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (1998) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Barnes argues that Amadi "has not articulated any federal right that has been violated other than some indeterminate 'right to freedom.'" (Doc. No. 9, PageID# 37.) Amadi responds that he has alleged "violation of his federal civil rights—the right to move freely, wrongful arrest[,] wrongful imprisonment and emotional distress." (Doc. No. 12, PageID# 77.) He also asserts that "Defendant refused to take action that would have granted [him] equal protection of the law." (*Id.* at PageID# 78.)

Regardless of whether Amadi has adequately alleged "the violation of a right secured by the Constitution and laws of the United States," *Salehpour*, 159 F.3d at 206, he has not alleged that Barnes committed the deprivations that he claims; therefore, he has failed to state a § 1983 claim against her. Barnes has informed the Court that she did not take office until February of 2017, "several years after the alleged events giving rise to [Amadi's] claims occurred." (Doc. No. 9, PageID# 37.) In ruling on Barnes's motion to dismiss, the Court may take judicial notice of the fact that Barnes did not assume the position of Commissioner of DHS until February 6, 2017, and that prior to that, and since 2007, Barnes had been working for the Tennessee Department of Human Resources. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Corbin v. Cannon*, 838 F. Supp. 561, 563 (M.D. Fla. 1993) (citing Rule 201 to support the court's decision to judicially notice the fact that "Defendant Cannon was not Sheriff of Pasco County" at the time of the alleged incidents, and proceeding to dismiss claims against him); *Haslam Names Danielle Whitworth Barnes Commissioner of Human Services*, Tenn.

15

Office of the Governor, https://www.tn.gov/governor/news/2017/1/23/haslam-names-danielle-whitworth-barnes-commissioner-of-human-services.html (last visited March 1, 2018).

Amadi does not dispute that Barnes came to office after the events in question, instead arguing that she is liable for "any wrongdoings or unlawful acts emanating from [her] office[]." (Doc. No. 12, PageID# 80.) But a state official cannot be held personally liable for the damage caused by his or her predecessor. *Young v. Johnson*, No. 1:14-CV-01237, 2015 WL 893366, at *2 (N.D. Ohio Mar. 3, 2015) ("Although a state official can be liable in his personal capacity for money damages when he acts under color of state law to deprive a person of a constitutional right, Young has not alleged that Gray did so. The allegations of the complaint all pre-date Gray's time as Chief Inspector, and Gray is not personally liable for the conduct of his predecessor."); *McLarney v. Bd. of Cty. Rd. Comm'rs for Cty. of Macomb*, No. 04-CV-72656-DT, 2005 WL 3008591, at *9 n.7 (E.D. Mich. Nov. 8, 2005) (finding that three defendants who were not appointed as commissioners to the Road Commission at the time the alleged takings and trespasses occurred could not be held "individually liable for decisions made by their predecessor board members."); *Hoffman v. Ohio Youth Comm'n*, No. C 71-263, 1975 WL 11934, at *1 (N.D. Ohio July 17, 1975) (finding that "a mere substitution of the successors on the damage claims would be improper under 42 U.S.C. § 1983, which . . . requires proof of personal participation in the allegedly unlawful conduct in order to recover against the named individual."). Because it has been determined that Barnes was not working at DHS when the events that gave rise to this action took place, and because Amadi has not alleged that Barnes was involved in those events in some other way, "it is impossible to see how [she] could be held responsible" for violating Amadi's constitutional rights. *Corbin*, 838 F. Supp. At 563–64. Amadi has therefore failed to state a claim under § 1983 against Barnes, and it is unnecessary to analyze her other arguments for dismissal.

## IV. Recommendation

Based on the foregoing, the undersigned RECOMMENDS that Barnes's motion to dismiss for failure to state a claim be GRANTED and that this action be DISMISSED WIHOUT PREJUDICE to Amadi filing an amended complaint to add the proper defendant(s). Outside of the determination that Barnes is not a proper party to this action, the merits of Amadi's allegations have yet to be considered. *Berndt v. State of Tenn.*, 796 F.2d 879, 882 (6th Cir. 1986) (citing *Wilger v. Dep't of Pensions and Sec. for the State of Ala.*, 593 F.2d 12, 13 (5th Cir. 1979). Amadi should therefore have an opportunity to amend his complaint to state his claims against the proper defendants, if he can do so. *See Gravitt v. Borgert*, No. 86-1973, 1987 WL 37169, at *1 (6th Cir. Apr. 22, 1987) (holding that pro se plaintiff "should be permitted to amend the complaint to change the defendants in the action" where plaintiff had "failed to state a cause of action against the named defendant" but "'the totality of conditions' complained of . . . may raise a substantially cognizable claim") (internal citations omitted); *Wilbon v. Brown*, No. 86-1142, 1986 WL 17772, at *1 (6th Cir. Sept. 22, 1986) (explaining that "where the dismissal of a pro se litigant's case is not on the merits and the allegations in the complaint indicate that there were individuals amenable to suit, the plaintiff should be allowed a chance to amend the complaint to add these other parties") (citing *Berndt*, 796 F.2d at 882–83).

Any party has fourteen days after being served with this Report and Recommendation in which to file any written objections to it. Any party opposing those objections shall have fourteen days after being served with them in which to file any response. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of further appeal of the matters it decides. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered this 29th day of March, 2018.

                                               ALISTAIR E. NEWBERN
                                               United States Magistrate Judge